VILLAGE OF MILL NECK, Plaintiff, *v.* THE TOWN OF OYSTER BAY
and Others, Defendants.

Supreme Court, Nassau County, April 29, 1931.

*William T. McCoun*, for the plaintiff.

*Payne, Wood & Littlejohn* [*Charles I. Wood* of counsel], for the defendants Town of Oyster Bay and others.

*Bonynge & Barker* [*Paul Bonynge* and *Daniel A. Dorsey* of counsel], for defendants Commissioners of the Locust Valley Water District and Commissioners of the Locust Valley Fire District.

*Pierce & Greer* [*Winslow S. Coates* and *H. Brua Campbell* of counsel], for the defendant Village of Matinecock.

*Cravath, de Gersdorff, Swaine & Wood*, for the defendant Piping Rock Water Company.

*Choate, Larocque & Mitchell*, for the defendants Starling W. Childs and others.

RUSSELL BENEDICT, Official Referee.   This is an action instituted on behalf of the plaintiff, the Village of Mill Neck, wherein it is sought, among other things, to apportion the real and personal property of the Locust Valley Water District in pursuance of section 35 of the Village Law, which provides as follows: " § 35. Apportionment of property and obligations of a special district of a town upon the incorporation of a part in a village.   If the territory so incorporated as a village includes within its boundaries part of a special district established by the town for a sewer, water, light, fire, park, health, police or any other special district for

municipal purposes, the proportion of the bonded debt incurred by the town and payable by a tax against the property within a special district, for whose benefit the bonds were issued which shall be assumed by the village and the apportionment of personal and real property belonging to the special district shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village, in the following manner: the town board of the town when acting as a board for a special district exclusive of a member who may reside in the village or the commissioner or commissioners of a special district where the special district is managed by a commissioner or commissioners exclusive of a member who may reside in the village and the trustees of the village being unable to agree within six months after the incorporation of the village becomes complete upon the proportion of the debt and the apportionment of the personal and real property, then the supreme court shall have power to determine such division and to enforce such award, division and determination as shall be made in the premises in a suit in equity to be brought in the name of either of the said parties."

Notwithstanding the provisions of the aforesaid section, the court, at Special Term, saw fit to refer this matter to one of the official referees " to take and hear the allegations and proofs of the parties hereto in relation to the allegations set forth in and by the pleadings herein, and to decide the same." The important facts, most of which were stipulated or proven without contradiction, are as follows: The Locust Valley Water District was created on March 7, 1922, to develop a water district within the town of Oyster Bay, Nassau county, N. Y. Commissioners were first appointed by the town board, and thereafter duly elected as provided by statute. Such commissioners, under their vested authority, entered into contracts for the construction of a water system, and served the required notice upon the town board of the amounts of such contracts and the sums of money necessary for the construction of said system. Thereafter the town board authorized the issuance of bonds in the sums of $330,000 and $65,000. The bonds for $330,000 were dated May 15, 1923, and were and are payable in installments of $20,625 on May fifteenth in each year from 1928 to 1943, both inclusive, and bear interest at the rate of four and one-quarter per cent per annum, said interest being due and payable semi-annually on May fifteenth and November fifteenth in each year. The $65,000 bonds are dated December 1, 1924, and were and are payable in installments of $5,000 on December first of each year, commencing in 1929, the final payment being due

December 1, 1941. These latter bonds also bear interest at four and one-quarter per cent per annum, payable semi-annually on the first days of June and December in each year. The total issue of bonds was in the sum of $395,000, and of this sum bonds in the amount of $71,875 have been retired, leaving a balance outstanding in the sum of $323,125. By stipulation between the parties it is agreed that the plaintiff, the village of Mill Neck, has paid to the town of Oyster Bay all indebtedness due from the plaintiff by reason of the issuance of said bonds to January 1, 1931. The village of Mill Neck became an incorporated village and a municipal corporation in the town of Oyster Bay on or about February 28, 1925, and has ever since been and now is such an incorporated village and municipal corporation, and the territory comprising said village includes within its boundaries a part of the said Locust Valley Water District. At the time of the incorporation of the plaintiff as aforesaid the assessment roll of said town of Oyster Bay of all personal and real property within the said Locust Valley Water District was $6,389,515, and the assessed valuation of the personal and real property of that portion of said Locust Valley Water District within the said village of Mill Neck was $869,900, and 13.614 per cent of the total assessed valuation of all personal and real property in said special water district at the time of the incorporation of plaintiff. The village of Matinecock became an incorporated village in April, 1928, at a time when this proceeding had been pending in the courts for a considerable period. The territory comprising said village includes within its boundaries a part of said Locust Valley Water District. At the time of the incorporation of said village of Matinecock the assessment roll of the town of Oyster Bay of all personal and real property within the said Locust Valley Water District was $7,502,000, and the assessed valuation of the personal and real property on that portion of the said water district within the village of Matinecock was $1,756,300, and 23.411 per cent of the total assessed valuation of all personal and real property then within the boundaries of said water district.

The village of Matinecock after its incorporation became an unwilling party to this litigation, it having been brought in on plaintiff's motion after it had declined plaintiff's requests to intervene. By this action the plaintiff seeks the following: " *First.* That the defendants Thomas C. Wade (substituted in the place of Benjamin W. Downing), E. Mortimer Ward and Edwin A. Schlotzhauer render an account of their proceedings as commissioners of the aforesaid Locust Valley Water District and be compelled to pay, deliver and convey to the plaintiff and the defendant Village of Matinecock, respectively, such money and real and personal

property as it is entitled to have and receive. *Second.* Apportioning, determining and allocating to the plaintiff and the defendant Village of Matinecock, respectively, the part or parts of the unpaid contractual obligations which have been incurred previous to the 28th day of February, 1925, by the defendants Thomas C. Wade (substituted as aforesaid), E. Mortimer Ward and Edwin A. Schlotzhauer in behalf of the Locust Valley Water District, and also of the bonded indebtedness heretofore incurred by or in behalf of the Locust Valley Water District which the said plaintiff and said defendant Village of Matinecock, respectively, must assume and pay. *Third.* Determining the rights and interests of the several parties hereto in and to the lands and premises which are described in the third amended complaint. *Fourth.* That a partition and division be made of the aforesaid real property among the several parties seized of or entitled thereto, according to their respective rights and interests therein, or if a partition thereof cannot be made without great prejudice to the parties interested therein, then that the said real property may be sold and the proceeds of such sale divided between the parties hereto according to their respective rights and interests therein after the payment of the costs and disbursements of this action. *Fifth.* That each and all of the defendants herein be forever restrained and enjoined from assessing, extending, levying or collecting any tax or taxes upon any property or properties within the Village of Mill Neck and in behalf of or for the aforesaid Locust Valley Water District. *Sixth.* Granting the plaintiff such other and further relief as may be deemed just and equitable, together with the costs and disbursements of this action."

At the time of the incorporation of the village of Mill Neck, on or about February 28, 1925, the territory within the boundaries of such incorporated village ceased to be a part of the Locust Valley Water District. There can be no dispute as to the correctness of this conclusion, as it was never intended that two municipal corporations, the town and the village, should exercise concurrently similar powers over the same territory. Such separation of the village from the special water district is expressly provided in the statute (Village Law, § 34, as added by Laws of 1922, chap. 395), wherein it is also expressly provided that the " territory so included within the boundaries of the village shall not be relieved from bearing its proportionate share of any liability or indebtedness incurred for such special district purposes while such territory was a part of such special district and until such liability is discharged. * * * " It was to clarify this independence of authority and to express in statutory form a rule for the apportion-

ment of town obligations as between the village and the town that sections 34 and 35 of the Village Law were enacted. These sections impose a liability upon the village which was formerly within the boundaries of the special district and provide for the collection of taxes by such village and the payment of the same to the town supervisor for the purpose of discharging such liability. Therefore, the village of Mill Neck ceased to be a part of the Locust Valley Water District on or about February 28, 1925.

At the time of its incorporation as aforesaid the assessed valuation of all the personal and real property of that portion of the village which was formerly within the boundaries of said Locust Valley Water District was 13.614 per cent of the assessed valuation of the entire water district before the incorporation of the plaintiff and its separation from the special water district as aforesaid. The village of Matinecock ceased to be a part of the Locust Valley Water District in April, 1928, and at that time the assessed valuation of all the personal and real property of that portion of the village which was formerly within the boundaries of said water district was 23.411 per cent of the assessed valuation of the entire water district before the village of Matinecock separated therefrom.

The plaintiff, the village of Mill Neck, is, therefore, obligated to raise by taxation and pay over to the supervisor of the town of Oyster Bay at least ten days before the same shall become due and payable, 13.614 per cent of any indebtedness or any installment thereof incurred by said town of Oyster Bay on behalf of said Locust Valley Water District prior to the date of the incorporation of said plaintiff. And the village of Matinecock shall likewise be obligated to raise by taxation and pay over to the said supervisor at the same time 23.411 per cent of any indebtedness or any installment thereof incurred by the town of Oyster Bay as aforesaid prior to the date of incorporation of said village of Matinecock.

The important question in this issue is the construction of that portion of section 35 of the Village Law wherein it provides for the apportionment of personal and real property belonging to the special district of a town upon the incorporation of a part in a village. The plaintiff, through its learned counsel, concedes that the personal and real property of the Locust Valley Water District is, " by reason of its nature, not susceptible to an actual partition without great prejudice to the interests of the owners thereof, and its principal value consists of its entirety as a going business," but nevertheless plaintiff claims that " the interests of all parties require that it shall be sold, and by a *receiver* appointed by the court for such purpose, and that the net proceeds of such sale shall be distributed * * *." (Plaintiff's brief, p. 22; stenographer's

minutes, p. 28.) And in its prayer for relief, paragraph 4, plaintiff asks for a judgment partitioning and dividing the property between the parties hereto. It does not seem reasonable to presume that the Legislature, by the enactment of section 35 of the Village Law, intended an actual division of the real and personal property of the water district between the district and the villages which were incorporated after the creation of the water district, or the sale of said properties and a division of the proceeds of such sale. The water district owns parcels of real property which concededly cannot actually be partitioned, and its real and personal property is all a part of its operating plant. Its assets consist of its water supply system, built and installed with money realized by the sale of the aforementioned bonds. The water district was duly created to furnish water to a large district, of which the plaintiff upon its incorporation formed less than one-seventh part. It is inconceivable that the plaintiff by this action could expect the court to order a partition or sale of the property of the water district, thereby destroying the benefits to other communities for which this district was created. The village of Matinecock is an unwilling party to this action, and this court will not construe section 35 of the Village Law to empower it to make any decree which will in any manner interfere with or destroy the only means of water supply which that community now enjoys. The enactment of this section was never intended to dismember or destroy special districts, nor to interrupt or interfere with the facilities and service which they afford. If such was the intent of the Legislature, then the advent of any new village would mark the destruction of every special district lying partially within the boundaries of the newly-created village. There is nothing in the record to show the value of the real and personal property of the Locust Valley Water District.

Upon all the evidence the plaintiff, the village of Mill Neck, is declared to be the owner of an undivided and indivisible interest equal to 13.614 per cent of the total value of all the real and personal property of the Locust Valley Water District as of February 28, 1925, and the defendant, the village of Matinecock, is declared to be the owner of an undivided and indivisible interest equal to 23.411 per cent of the total value of all the real and personal property of said water district as of April, 1928, and that such interests as aforesaid be apportioned to said villages, but such interests as so apportioned shall neither be divisible nor subject to partition or sale so long as said special district shall continue to function under the authority which created it. Except as herein indicated, the complaint of the plaintiff is in all other respects dismissed. I am not entirely satisfied that a reasonable effort was made to agree

within six months after the incorporation of the plaintiff upon the proportion of the debt and the apportionment of the personal and real property, hence no costs will be allowed to any party to this action. All requests for findings submitted have been passed upon. The attorney for the plaintiff will prepare and submit for signature, on notice, a decision embodying without repetition all findings made on behalf of any party to this action. Such decision shall be submitted within one week after notice of this memorandum has been published in the New York Law Journal.